# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSE MURATI-SEPULVEDA, <br><br> Defendant. | Criminal No.07-075(CCC) |

## PLEA AGREEMENT

TO THE HONORABLE COURT:




COMES NOW the United States of America, by and through its attorneys, Rosa Emilia Rodríguez-Vélez, United States Attorney for the District of Puerto Rico, José A. Ruiz-Santiago, Assistant U.S. Attorney, Chief, Criminal Division, and Julia Díaz-Rex, Assistant United States Attorney, for said District and the defendant, **JOSE MURATI-SEPULVEDA**, and the defendant's counsel, Gary Montilla, Esq., pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, and state to this Honorable Court, that they have reached an agreement, the terms and conditions of which are as follows:

### 1. COUNT TO WHICH DEFENDANT PLEADS GUILTY

The defendant agrees to plead guilty to COUNT ONE of the Indictment pending against him, charging him engaging in a conspiracy to defraud the United States, in violation of Title 18, United States Code, Section 371.

### 2. MAXIMUM PENALTIES

The maximum penalty for the offense charged in COUNT ONE of the indictment is a term of imprisonment of not more than five (5) years and/or a fine of not more than $500,000, plus a term

Plea Agreement
U.S. v. José Murati-Sepúlveda
Criminal No. 07-075 (CCC)
Page 2

of supervised release of not more than three (3) years in addition to any term of incarceration, and a special assessment of one hundred dollars ($100.00) per count, as required by Title 18, United States Code, Section 3013(a).

### 3.    FINES AND/OR RESTITUTION

The Court may, pursuant to Section 5E1.2(I) of the Sentencing Guidelines, Policy Statements, Application, and Background Notes, order the defendant to pay a fine sufficient to reimburse the government for the costs of any imprisonment and/or supervised release ordered and also the Court may impose restitution. The defendant agrees to execute a financial statement to the United States (OBD Form 500). The United States will make no recommendations as to the imposition of fines.




### 4.    RULE 11(c)(1)(B) WARNINGS

The defendant is aware that the defendant's sentence is within the sound discretion of the sentencing judge, but the same may be imposed following the United States Sentencing Guidelines, Policy Statements, Application, and Background Notes as advisory to the imposition of sentence. The defendant is aware that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense to which the defendant pleads guilty. If the Court should impose a sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

5. **ADVISORY NATURE OF THE SENTENCING GUIDELINES**

The defendant is aware that pursuant to the decisions issued on January 12, 2005, by the Supreme Court of the United States in the cases of United States v. Booker and United States v. Fanfan, 125 S.Ct. 738 , 2005 WL 50108 (January 12, 2005), the Sentencing Guidelines are no longer mandatory and must be considered effectively advisory.

6. **SENTENCING GUIDELINE CALCULATIONS**

The United States and the defendant agree that the following Sentencing Guidelines calculations apply to the defendant's conduct with regard to COUNT ONE of the indictment:

| BASE OFFENSE LEVEL [USSG § 2N2.1 and § 2B1.1] | | 6 |
|---|---|---|
| **Specific Offense Characteristics** | Defendant to be held accountable for a loss of more than $30,000 but less than $70,000 [§ 2B1.1(b)(1)(D)] | +6 |
| | The offense involved 10 or more victims or was committed through mass marketing [§ 2B1.1(b)(2)(B)] | +2 |
| **Role in Offense** | <u>Open issue.</u> The defense will argue that defendant had a minor role in the offense. The Government will argue that defendant was not a minor participant in the offense. | -2 or +0 |
| Acceptance of Responsibility [USSG § 3E1.1] | | -2 |
| TOTAL OFFENSE LEVEL | | 10 or 12 |
| TOTAL Imprisonment Range @ Criminal History Category 'I' | | 6-12, Zone B 10-16, Zone C |

7. **SPECIFIC SENTENCE RECOMMENDATION**

Should the Court find that defendant's total offense level is '10', the parties would recommend a sentence of 3 years probation with conditions of home detention for the first 6 months. Should the Court find that defendant's total offense level is '12', the parties would recommend a 10-month split sentence, that is, 5 months of imprisonment followed by a term of supervised release that

includes home detention or community confinement during the first 5 months of the supervised release term. This recommendation is subject to defendant possessing a Criminal History Category of 'I'. Should the defendant possess a CHC greater than 'I', the parties agree to recommend a sentence of imprisonment at the lower end of the applicable guideline.

### 8. NO FURTHER ADJUSTMENTS OR DEPARTURES

The United States and the defendant agree that no further adjustments or departures to the defendant's total offense level shall be sought by the parties.

### 9. NO STIPULATION AS TO CRIMINAL HISTORY CATEGORY



The parties do not stipulate any assessment as to the defendant's Criminal History Category.

### 10. UNITED STATES' RESERVATION OF RIGHTS



The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right: (a) to bring its version of the facts of this case including its file and any investigative files to the attention of the probation office in connection with that office's preparation of a presentence report; (b) to dispute sentencing factors or facts material to sentencing; and, (c) to seek resolution of such factors or facts in conference with opposing counsel and the probation office.

### 11. SATISFACTION WITH COUNSEL

The defendant represents to the Court to be satisfied with counsel, Gary Montilla, Esq., and indicates that counsel has rendered effective legal assistance.

Plea Agreement
U.S. v. José Murati-Sepúlveda
Criminal No. 07-075 (CCC)
Page 5

## 12. RIGHTS SURRENDERED BY DEFENDANT THROUGH GUILTY PLEA

Defendant understands that by entering into this agreement, defendant surrenders certain rights as provided in this agreement. Defendant understands that the right of criminal defendants include the following:

a. If the defendant had persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States and the judge agree.

b. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. The defendant and defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent, that it could not convict the defendant unless, after hearing all the evidence, it was persuaded of the defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.




c. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established the defendant's guilt beyond a reasonable doubt.

d. At a trial, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those witnesses and defendant's attorney would be able to cross-examine them. In turn, the defendant could present

witnesses and other evidence in defendant's own behalf. If the witnesses for the defendant would not appear voluntarily, defendant could require their attendance through the subpoena power of the Court.

  e. At a trial, the defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilty could be drawn from his refusal to testify. If the defendant desired to do so, the defendant could testify in his own behalf.

### 13. STATEMENT OF FACTS



The accompanying Statement of Facts signed by the defendant is hereby incorporated into this plea agreement. Defendant adopts the Statement of Facts and agrees that the facts therein are accurate in every respect and, had the matter proceeded to trial, that the United States would have proven those facts beyond a reasonable doubt.

### 14. LIMITATIONS OF PLEA AGREEMENT



This plea agreement binds only the United States Attorney's Office for the District of Puerto Rico and the defendant; it does not bind any other federal district, state or local authorities. Furthermore, the defendant is fully aware that the Court is not bound by this plea agreement, including but not limited as to: advisory sentencing guidelines calculations, stipulations, and/or sentence recommendations.

### 15. ENTIRETY OF PLEA AGREEMENT

This written agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel. The United States has made no promises or representations except as set forth in writing in this plea agreement and deny the existence of any other term and conditions not stated herein.

### 16. AMENDMENTS TO PLEA AGREEMENT

No other promises, terms or conditions will be entered unless in writing and signed by all parties.

### 17. WAIVER OF APPEAL

The defendant hereby agrees that if this Honorable Court accepts this plea agreement and sentences him/her according to its terms, conditions, and recommendations, the defendant waives and surrenders his right to appeal the judgment and sentence in this case.

### 18. VOLUNTARINESS OF GUILTY PLEA

The defendant acknowledges that no threats have been made against the defendant and that the defendant is pleading guilty freely and voluntarily because the defendant is guilty.

ROSA EMILIA RODRIGUEZ-VELEZ
United States Attorney

José A. Ruiz Santiago
Assistant U.S. Attorney
Chief, Criminal Division
Dated: 9/20/07

José Murati-Sepúlveda
Defendant
Dated: 9/20/07

Gary Montilla
Counsel for Defendant
Dated: 9/20/07

I have consulted with my counsel and fully understand all my rights with respect to the Indictment pending against me. Further, I have consulted with my attorney and fully understand my rights with respect to the provision of the <u>Sentencing Guidelines, Policy Statements, Application, and Background Notes</u> which may apply in my case. I have read this plea agreement and carefully reviewed every part of it with my attorneys. I fully understand this agreement and I voluntarily agree to it.

Date: 9/20/07

_____
José Murati-Sepúlveda
Defendant

I am the attorney for the defendant. I have fully explained to the defendant his rights with respect to the pending Indictment. Further, I have reviewed the provisions of the <u>Sentencing Guidelines, Policy Statements, Application, and Background Notes</u>, and have fully explained to the defendant the provisions of those guidelines which may apply in this case. I have also explained to the defendant the advisory nature of the <u>Sentencing Guidelines</u>. I have carefully reviewed every part this plea agreement with the defendant. To my knowledge, the defendant is entering into this agreement is voluntarily, intelligently and with full knowledge of all the consequences of his plea of guilty.

Date: 9/20/07

_____
Gary Montilla, Esq.
Counsel for Defendant

Plea Agreement
U.S. v. José Murati-Sepúlveda
Criminal No. 07-075 (CCC)
Page 9

## GOVERNMENT'S VERSION OF THE FACTS

In conjunction with the submission of the accompanying plea agreement in this case, the United States of America submits the following statement setting forth the United States' version of the facts leading to the defendant's acceptance of criminal responsibility for Count One of the indictment.

Pharma Blood was a business that advertised, marketed and distributed a cancer treatment for cancer patients by way of the "Pharma Blood Cancer Vaccination" (PCV), an autologous hemoderivative cancer immunotherapy. PCV was a drug that was not approved for use in humans in the United States by the FDA. From mid-June 2003 to June 24, 2004, the PCV was made available to the general public at Pharma Blood Cancer Center, as San Juan Bautista Hospital, in Caguas, Puerto Rico.

Pharma Blood, Inc. was a profit corporation organized under the laws of the State of Florida on April 23, 2002, and duly authorized to do business in Puerto Rico since January 28, 2004. Pharma Blood Medical Center, Inc. was a profit corporation organized under the laws of the Commonwealth of Puerto Rico on or about March 21, 2003. Pharmablood Medical Center, Inc. possessed bank accounts at Banco Bilbao Viscaya and Doral Bank, both financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation. Pharma Blood Research Corporation was a non-profit corporation organized under the laws of the Commonwealth of Puerto Rico on August 18, 2003.




From on or about March 2003 and continuing through to on or about June 24, 2004, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court, defendant [2] JOSE MURATI-SEPULVEDA knowingly and willfully agreed with others to unlawfully market and distribute in interstate commerce the PCV, a drug that was not approved for use in human beings in the United States by the federal Food and Drug Administration, for personal gain and profit, for the purpose of impairing, obstructing and defeating the lawful function of said agency of the United States.

During the time of the conspiracy defendant [2] JOSE MURATI-SEPULVEDA failed to exercise due diligence in informing himself of the legal requirements to marketing, advertising and distributing the PCV in the United States.

Defendant MURATI was the Chief Executive Officer of Pharma Blood Medical Center, Inc., a corporation organized under the laws of the Commonwealth of Puerto Rico. On May 1, 2003, a Patent Technology License Agreement was signed between PharmaBlood, Inc., represented by defendants LASALVIA and ALBERTINI, and PharmaBlood Medical Center, Inc., represented by defendant MURATI.

On or about July 10, 2003, defendant MURATI signed an advertisement contract with *El Nuevo Día*, for the publishing of Pharma Blood advertising in a publication known as *Salud Al Día* (Current Health).

On or about July 18, 2003, defendant MURATI signed an Agreement for Investigative Services with a private detective, and paid $1,000 in advance, for the investigation of an oncologist that had requested information from the Puerto Rico Medical Examining Board about defendant LASALVIA.

On or about August 4, 2003, defendant MURATI issued a Pharma Blood Memorandum ordering that no treatment for any patient could commence unless the patient paid at least one third (1/3) of the treatment's cost in advance.

Since it commenced operations in Puerto Rico, up to on or about November 19, 2003, Pharma Blood Medical Center, Inc. collected fees from patients and consultation fees in relation to Pharma Blood's Cancer

Plea Agreement
U.S. v. José Murati-Sepúlveda
Criminal No. 07-075 (CCC)
Page 10

Vaccination, totaling approximately $246,841.02, while incurring in advertising expenses totaling approximately $58,701.94. In addition to paying for advertising expenses, MURATI, paid $195,827 in salaries and benefits to the physicians in addition to paying leases and purchasing equipment and office supplies.

Defendant MURATI was not a physician, nor was he involved the medical procedures involved. He did not treat patients nor was he present during the day-to-day treatments. He did not interact with patients or their families.

On or about November 20, 2003, defendant ALBERTINI faxed a letter from Pharma Blood's offices in North Miami, to defendant COTTO in Puerto Rico, where ALBERTINI warned COTTO that FDA regulations prohibited the dissemination of information to the public about treatments and drugs not approved by FDA. Defendant MURATI has stated that he never received or read this faxed letter. However, on December 2, 2003, the faxed letter was seized by FDA agents during the execution of a federal search warrant at Pharma Blood's Cancer Center, in San Juan Bautista Hospital.

After the execution of said search warrant on December 2, 2003, and continuing through to June 24, 2004, defendant [2] JOSE MURATI-SEPULVEDA and other persons associated to Pharma Blood continued to operate Pharma Blood Cancer Center in San Juan Bautista Hospital, marketing, distributing and injecting the PCV into human beings and continued to charge patients for said vaccine. Defendant MURATI did not participate in physically distributing and injecting the PVC into human beings, nor did he personally participate in billing the patients.

Full discovery has been provided to defense.

_____
José A. Ruiz-Santiago
Assistant U.S. Attorney
Chief, Criminal Division
Dated: 9/20/07

_____
José Murati-Sepúlveda
Defendant
Dated: 9/20/07

_____
Gary Montilla, Esq.
Counsel for Defendant
Dated: 9/20/07